The STATE of Ohio, Appellee,

v.

LANE, Appellant.

[Cite as *State v. Lane* (1997), 118 Ohio App.3d 485.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 96 CA 2201.

Decided Feb. 28, 1997.

*Edward R. Bunstine II*, Director of Law, for appellee.

*Ben A. Rainsberger*, Assistant Public Defender, for appellant.

PETER B. ABELE, Judge.

This is an appeal from a judgment of conviction and sentence entered by the Chillicothe Municipal Court. The jury found Sandra L. Lane, defendant below and appellant herein, guilty of assault in violation of R.C. 2903.13.

Appellant assigns the following error:

"The court below erred in seating the jury by calling veniremen in alphabetical order."

On September 7, 1995, appellant was charged with assault in violation of R.C. 2903.13. On the same day, appellant entered a not guilty plea.

The court held a jury trial on March 26, 1996. Shortly after the jury was sworn, appellant objected to the array. Appellant argued that the jurors had been seated improperly. Appellant indicated on the record that her objection was brought to the court's attention earlier, at a point prior to voir dire, and the court acknowledged that it was. The court overruled the objection and proceeded to trial.

After reviewing the evidence adduced at trial, the jury found appellant guilty as charged. Appellant filed a timely notice of appeal.

In her sole assignment of error, appellant asserts that the trial court erred to her prejudice "in seating the jury by calling veniremen in alphabetical order." In her brief, appellant argues that the names on the venire panel did not appear in the sequence that they were drawn from the jury wheel. Appellant asserts that names were drawn and then alphabetized. Appellant concedes that the verdict may stand as long as the jurors actually selected were qualified. Appellant argues, however, that she was prejudiced because she was forced to use a peremptory challenge to remove a juror who was related by marriage to another juror (and consequently shared the same last name), thereby depriving appellant of "the effective use of all of her peremptory challenges."

At the outset, we note that appellant failed to provide this court with a transcript of any hearing on appellant's motion to challenge the jury array, or a narrative or an agreed statement under either App.R. 9(C) or (D). Our review of the record does not reveal whether the court conducted a hearing on appellant's motion or whether the parties perhaps stipulated to the pertinent facts surrounding the selection of jurors. We note that without evidence in some form appearing in the record, we are unable to discern the precise procedure used by the clerk to select the array of jurors for the trial. Pursuant to App.R. 9(B), the duty to provide a transcript for appellate review falls upon the appellant. The duty falls upon the appellant because the appellant bears the burden of showing error by reference to the matters in the record. See App.R. 9(B); *State v. Prince* (1991), 71 Ohio App.3d 694, 595 N.E.2d 376; *Columbus v. Hodge* (1987), 37 Ohio App.3d 68, 523 N.E.2d 515; *Bates & Springer, Inc. v. Stallworth* (1978), 56 Ohio App.2d 223, 10 O.O.3d 227, 382 N.E.2d 1179; *Spofforth v. Brown* (Mar. 30, 1995), Athens App. No. 94 CA 1629, unreported, 1995 WL 146072.

We also note that appellant has not provided us with a permissible substitute for a transcript as authorized by App.R. 9(C). This rule provides that if a transcript of the proceedings below is unavailable, appellant may prepare a

statement of the evidence from the best available means, including appellant's recollection. However, the rule also requires appellant to serve the statement of the evidence on appellee, who may then object or propose amendments to the statement. Appellant's statement of the evidence and any objections or amendments by appellee must then be submitted to the trial court for settlement and approval. The statement of the evidence, as settled and approved by the trial court, is then included by the clerk in the record on appeal. Appellant has apparently not availed herself of the opportunity to prepare, in conjunction with appellee and the trial court, an agreed statement showing how the issue presented in this appeal arose and was decided by the trial court. See App.R. 9(D).

It is axiomatic that any error on the part of a trial court must affirmatively appear on the record, or an appellate court will presume that the judgment and proceedings below were valid. See *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384; *State ex rel. Fisher v. Reno Hotel, Inc.* (1994), 95 Ohio App.3d 67, 641 N.E.2d 1155; *Prince; Hodge; Spofforth.* Thus, when an appellant fails to provide a transcript of the proceedings or a permissible substitute in lieu of a transcript, or when an appellant fails to properly preserve an alleged error for appellate review, the reviewing court has nothing to pass upon and must affirm the lower court's judgment. *Knapp; Holley v. Higgins* (1993), 86 Ohio App.3d 240, 620 N.E.2d 251; *Lawson v. Clark Rubber Co.* (1993), 84 Ohio App.3d 831, 619 N.E.2d 26.

We do note, however, that the appellate briefs contain a description of the proceedings used to select the array of jurors for trial. Assuming, *arguendo*, that the issue was properly before us, we are not persuaded that appellant's argument is meritorious. From the description provided by both parties in their briefs, it appears that the methodology appellant assigns as error proceeded in several steps. First, the jury commissioner drew names at random from the jury wheel. At that time, the names were recorded in accordance with R.C. 2313.21.[1] Afterward, however, it appears that the court alphabetized the names and

---

1. R.C. 2313.21 specifies the procedure for the drawing of jurors. It states in part:

"The drawing of jurors under section 2313.23 of the Revised Code shall be conducted as follows:

"(A) If the jury wheel is utilized the following procedure shall be followed:

"(1) One of the commissioners of jurors or his designated representative shall thoroughly mix the ballots in the jury wheel without exposing them.

"(2) The commissioner or his designated representative shall then, without seeing the name on the ballot, publicly draw out of the jury wheel one ballot and continue to draw in like manner one ballot at a time, until the required number has been drawn. Whenever a ballot containing a name that has been stricken from the jury list is drawn, it shall be destroyed immediately, and another drawn in its place.

numbered them. Thereafter, when veniremen were to be called, the clerk would draw one number, and then call the potential juror with that number and additional potential jurors in numerical succession. Thus, while the venire was still selected at random, the Chillicothe Municipal Court has added an extra step that results in different array permutations being called than would have been called had the court simply called names for service in the order drawn.[2]

Our court has previously addressed similar issues regarding the procedures set forth in R.C. 2313.21. In *State v. Jones* (June 18, 1993), Pickaway App. No. 92CA29, unreported, 1993 WL 218207, the appellant claimed error, citing the trial court's practice of calling randomly chosen prospective jurors out of the order in which their names were drawn.[3] We wrote in pertinent part:

"The clear language of R.C. 2313.21 and 2313.23 indicates that the procedures addressed in R.C. 2313.21 apply to the selection of jurors for the term of court, not for each individual jury trial. There was ample evidence, and appellant concedes, that the statutory procedures were followed in the selection of the venire of two hundred fifty for use during the term.

" * * * If the legislature had wanted the procedure set forth in R.C. 2313.21 to apply here, we assume it would have said so explicitly. In the absence of an express requirement otherwise, we cannot say that Mrs. Cline's procedure for drawing the individual petit jury arrays violated any statutory right of the appellant.

"Appellant does not allege that any of the jurors so selected were unqualified to serve or that some group was excluded in violation of the fair representative

---

"(3) The clerk of the court of common pleas or his designated representative shall enter on a venire the name and place of residence contained on each ballot drawn, before another ballot is drawn, unless the name contained on such ballot has been stricken from the jury list.

"(4) After drawing the requisite number, the venires, containing the names and the respective places of residence of the persons drawn, and specifying for what court and for what term or part of a term they were drawn, shall be signed by the clerk or his deputy or other designated representative and all the attending officers or their designated representatives, and delivered to the sheriff for service. The officers or their designated representatives shall also certify that sections 2313.01 to 2313.46 of the Revised Code, have been complied with.

"(5) When the drawing is finished, the jury wheel shall be closed and sealed in the presence of the officers or their designated representatives. All ballots so drawn out of the jury wheel and not required to be returned to it, shall be delivered to the clerk for use during the term of court."

2. As suggested by appellant's brief, we acknowledge that the court's method of calling veniremen increases the chance of calling jurors who are related to one another by virtue of them having the same last name.

3. In *Jones*, the clerk of courts made a separate card for each prospective juror and kept the cards in a box. When asked to call jurors, she then chose cards at random rather than in the order that they were originally drawn for the venire.

cross-section of the community requirement. See *State v. Fulton* (1991), 57 Ohio St.3d 120, 566 N.E.2d 1195. See, also, Crim.R. 24(E), which states that no verdict shall be set aside based upon an alleged irregularity in selecting a jury panel if it is insignificant to the fairness of the trial. Appellant has failed to demonstrate any prejudice or irregularities that may have affected his substantial rights. Nor has the appellant demonstrated how his right to an impartial jury was violated. See *State v. Puente* (1982), 69 Ohio St.2d 136 [23 O.O.3d 178, 431 N.E.2d 987], certiorari denied (1982), [457 U.S. 1109, 102 S.Ct. 2910, 73 L.Ed.2d 1318]; *State v. Patton* (Feb.[July] 27, 1990), Lucas App. No. L–89–041, unreported [1990 WL 106436]; *State v. Bland* (Aug. 15, 1983), Belmont App. No. 83–B–2, unreported, [1983 WL 6697]; and *State v. Geckel* (June 19, 1981), Wood App. No. WD–8046, unreported, [1981 WL 5660].

"Because no statute was violated and because appellant does not allege his constitutional rights were violated by the makeup of the jury array, the trial court did not err in overruling appellant's challenge to the array."

██  Thus, if the issue had been properly preserved for review, we would find that the procedure used by the trial court, under the circumstances present in the instant case, did not violate appellant's statutory rights. Moreover, as we discuss *infra*, the juror selection method employed by the trial court did not prejudice appellant or affect her substantive rights. We do agree with appellant, however, that the better method for selecting, listing, and calling potential jurors is simply to list the names in the order that they were drawn. That procedure will likely foreclose potential error regarding the jury selection process.

We additionally note that, unlike the situation in *Jones,* appellant in the case *sub judice* argues that her constitutional rights were violated. Specifically, appellant argues that she was denied her right to a fair trial because she had to use a peremptory challenge to remove a juror who was related to another juror by marriage. Appellant argues that because she had to use a peremptory challenge in this way, she was denied the effective use of her challenges and was thus denied a fair trial. Appellant cites *Swain v. Alabama* (1965), 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, and *State v. Pearson* (Mar. 12, 1984), Madison App. No. CA–790, unreported, 1984 WL 4355, in support of her argument.

In *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, the Ohio Supreme Court addressed a prejudice claim similar to appellant's. In *Broom,* the appellant challenged a juror for cause. When the court refused to remove the juror, the appellant used a peremptory challenge to remove the juror. Subsequently, both parties passed the jury for cause.[4] Before the Ohio Supreme Court,

---

4. While the appellant in *Broom* did exercise six peremptory challenges, he approved the jury selected while still holding six unexercised peremptory challenges.

appellant argued that he was denied due process in violation of the Sixth and Fourteenth Amendments when the trial court denied his challenge for cause. In rejecting the appellant's claim, the court focused on the fact that the appellant had passed the jurors who actually sat on the jury for cause. The court wrote as follows:

" * * * In *Ross v. Oklahoma* (1988), 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80, the Supreme Court further explained that any claim that the jury was not impartial is not focused on the juror excused by the exercise of the peremptory challenge, but rather is focused on the jurors who ultimately sat. Therefore, in order to state a constitutional violation in this situation, the defendant must use all of his peremptory challenges and demonstrate that one of the jurors seated was not impartial. *Unless a juror is challenged for cause, he is presumed to be impartial.* Even if the court erred in denying the appellant's motion, appellant has not been denied a right to an impartial jury, nor has he been deprived of his right to due process in this context by being 'forced' to use a peremptory challenge." (Emphasis added.) *Id.,* 40 Ohio St.3d at 287–288, 533 N.E.2d at 695.

Our court has previously followed the *Broom* decision. In *State v. Montgomery* (Mar. 29, 1996), Washington App. No. 94CA40, unreported, 1996 WL 141675, the appellant argued that the trial court erred by refusing to remove a prospective juror (Juror Ward) for cause. The appellant had requested the court to remove the juror for cause. When the court refused, the appellant used one of his four peremptory challenges to remove the juror. The appellant then requested an additional peremptory challenge to remove another juror (Juror Bowman). In rejecting the appellant's contention that he was prejudiced because he had to use a peremptory challenge to remove the juror whom he felt the court should have removed for cause, this court wrote:

"In his argument, appellant focuses on his challenge for cause of Mr. Ward and does not demonstrate how he was prejudiced by juror Bowman remaining on the jury. The State argues that this issue is moot because Mr. Ward was not on the jury.

"The Ohio Supreme Court has said that 'any claim that the jury was not impartial is not focused on the juror excused by the exercise of the peremptory challenge, but rather is focused on the jurors who ultimately sat.' *State v. Broom* (1988), 40 Ohio St.3d 277, 288 [533 N.E.2d 682, 695], citing *Ross v. Oklahoma* (1988), 487 U.S. 81 [108 S.Ct. 2273, 101 L.Ed.2d 80]. See *State v. Allen* (1995), 73 Ohio St.3d 626, 646 [653 N.E.2d 675, 692–693] (Wright, J., dissenting). 'In order to state a constitutional violation in this situation, the defendant must use all of his peremptory challenges and demonstrate that one of the jurors seated was not impartial.' *Broom* at 288 [533 N.E.2d at 695]. See *Allen* at 647 [653 N.E.2d at

693]. 'Unless a juror is challenged for cause, he is presumed to be impartial.' *Broom* at 288 [533 N.E.2d at 695].

"In the case *sub judice,* the appellant exercised all of his peremptory challenges but did not demonstrate that one of the jurors seated was not impartial. Although appellant did indicate on the record which juror he wanted to remove, he never challenged that juror for cause. Therefore, even if the trial court erred in denying the appellant's motion to remove Mr. Ward, it did not deny appellant his right to an impartial jury.

"Accordingly, appellant's third assignment of error is overruled." [5]

■ In light of the authorities quoted above, we would conclude that appellant's right to a fair trial was not violated, if the question were properly before this court. First, we note that appellant did not request that the trial court dismiss either or both of the related jurors for cause.[6] Additionally, although appellant asserts that "in having to use a peremptory challenge to remove one of the related jurors, the appellant was forced to leave another juror seated who appellant was not comfortable leaving on the jury," appellant did not request that the court dismiss any remaining jurors for cause. Thus, appellant waived any argument that any of the jurors who actually sat were unqualified, irrespective of appellant's level of comfort with having them on the jury.

Finally, we note that the *Pearson* decision cited by appellant is distinguishable from the case at bar. The court in *Pearson* wrote as follows:

"The state also argues that appellant was not prejudiced by the trial court's decision not to dismiss [the wife of an assistant prosecutor] for cause since she was ultimately removed from the jury by appellant's use of one of his peremptory challenges. This approach fails to take into account *Swain v. Alabama* (1965), 380 U.S. 202, 219, 85 S.Ct. 824, 835 [13 L.Ed.2d 759, 771–772], wherein the Supreme Court stated that ' * * * the [peremptory] challenge is "one of the most

---

5. Other courts have reached the same result. In *State v. Williams* (Nov. 1, 1995), Summit App. No. 16418, unreported, 1995 WL 641137, the Ninth District wrote as follows:

"[O]ur focus is on only those members of the venire who were seated on the jury. A defendant's right to an impartial jury is not violated if the jury that is seated is impartial, even if the defendant had to use peremptory challenges to achieve that result. *Ross v. Oklahoma* (1988), 487 U.S. 81, 88 [108 S.Ct. 2273, 2278] 101 L.Ed.2d 80, 90. Accordingly, Williams was not prejudiced by any errors in the trial court's refusal to allow his challenges to the five veniremen who later were excused as a result of his peremptory challenges. Williams' rights were also not violated by the trial court's refusal to allow his challenges to the venire member who was excused for personal reasons or to the member who was not needed; neither of these persons were seated on the jury."

6. We note that the transcript does not suggest that either juror should have been dismissed for cause, in light of the fact that both mother-in-law and daughter-in-law stated that their mutual presence on the jury would not affect their decision-making in any way.

important [of the] rights [secured] to the accused." The denial or impairment of the right is reversible error without a showing of prejudice.' (Citations omitted.) By having to exercise one of his peremptory challenges in order to remove [the assistant prosecutor's wife] from the jury, appellant was effectively reduced to only three peremptory challenges."

First, we note that *Pearson* was decided in 1984, before the Ohio Supreme Court decided *Broom.* Second, we note that in the instant case, as opposed to the facts in *Pearson,* appellant did not challenge any jurors for cause, including the two related jurors. Third, we also note that the part of *Pearson* cited by appellant is premised upon language found in an historical background passage in *Swain.* Our review of *Swain* reveals that the court's extensive tracing of the peremptory challenge's history was not essential to the holding of the case, which dealt with racially based use of the peremptory challenge by the prosecutor.[7]

Accordingly, based on the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

*Judgment affirmed.*

STEPHENSON, P.J., and KLINE, J., concur.

---

7. The United States Supreme Court revisited *Swain* and overruled it in part in *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.